UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Youa Vang Lee, trustee for the                          Civil No. 07-1205 (PAM/JSM)
heirs and next-of-kin of
Fong Lee, Decedent,

                          Plaintiff,

v.                                                   **MEMORANDUM AND ORDER**

Officer Jason Anderson and
the City of Minneapolis,

                          Defendants.

_____

          This matter is before the Court on Defendants' Motion for Partial Summary Judgment.

For the reasons that follow, the Motion is granted.

## BACKGROUND

          The record in this case is substantial, and the parties' versions of particular events are

at times very different.  Many of the parties' factual disputes are in fact irrelevant to the legal

issues before the Court, as will be explained in further detail below.  For purposes of

deciding Defendants' Motion for Summary Judgment, the Court considers the evidence in

the light most favorable to Plaintiff as the non-moving party.  Thus, the following account

is not a determination by the Court of any conclusive facts, but rather a recounting of

Plaintiff's version of events before and after Lee's death as supported by at least some of the

evidence.

**A.      The Shooting**

In July 2006, Fong Lee was riding his bicycle near Cityview Elementary School in Minneapolis with some of his friends.  Defendant Jason Anderson, a Minneapolis Police Officer, was driving a marked police car in the area with Craig Benz, a trooper with the Minnesota Highway Patrol.  Anderson and Benz saw Lee and his friends riding their bicycles into the parking lot of the school and, although they did not observe anything suspicious at that time, they decided to drive up to the group.  After following the group into the parking lot, Plaintiff contends that Anderson accelerated and hit Lee's bicycle with the police car, knocking Lee to the ground.[1]  Lee got up and ran away.  According to Plaintiff, Lee did not have a gun on his person while riding his bike or while being chased by Anderson and Benz.[2]  Anderson stopped the car and both he and Benz got out of the car and chased Lee as he fled.  Benz was behind Anderson and at some point lost sight of Lee and Anderson as they ran around the school.  Anderson fired one shot at Lee that struck the ground.  Anderson then fired three shots that struck Lee and knocked him to the ground.  Anderson then fired an additional five shots.[3]  Lee died at the scene.

---

[1] Anderson and Benz said that Lee either fell off his bike or jumped off and started running.  Both say that the police car never came into contact with Lee or his bicycle.  Both also say that they were just going to make a "citizen contact" with the group, but decided to pursue Lee after they observed another boy suspiciously hand something to Lee.

[2] Both Anderson and Lee say that they saw Lee with a gun.  Anderson says that he repeatedly yelled at Lee to put the gun down.  One person near the school that day heard someone yell repeatedly "put the gun down."

[3] Anderson says that he did not shoot at Lee until Lee turned and started to raise the gun in his and Benz's direction.  The Internal Affairs Division that conducted a review of

**B.     The Investigation**

Several Minneapolis Police Department Officers arrived on the scene shortly after the shooting.  Some officers taped off the area with crime scene tape while others conducted interviews with the residents of houses neighboring the school.  Police investigators also arrived later at the scene.  Investigators searched for and gathered the spent casings at the scene of the shooting and also retrieved Anderson's gun.  Anderson and Benz, as well as at least one witness, were interviewed and their statements transcribed.  Except as part of this litigation, no one from the City ever interviewed the friends with whom Lee was biking that day.

A security camera at the school captured a portion of the chase.  A police investigator viewed the tape on the day of the shooting and Plaintiff's expert witness also subsequently viewed the tape.  The video depicts Lee running along the side of the school being chased by Anderson.  Plaintiff's expert determined that Lee was not carrying anything in his right hand in the video.[4]

Shortly after the shooting, Plaintiff filed a formal request with the Minneapolis Department of Civil Rights to investigate the circumstances surrounding Lee's death.  As of February 2009, the Department had yet to institute an investigation.

---

Anderson's actions concluded that Anderson was justified in shooting because he reasonably feared for his own and Benz's safety, even though Lee never actually pointed the gun at Anderson or Benz.

[4] The police investigator noted that Lee was carrying a dark object in his hand.

**C.     The Gun**

Investigators found a black handgun near Lee's left hand.  The gun was a Baikal black semi-automatic .380 caliber handgun, with the serial number BHE2281.  There were no fingerprints or other forensic evidence on the recovered gun that could be matched to Lee.

In February 2004 Dang Her's home was burglarized and a handgun stolen.  Mr. Her reported the burglary.  He did not know the serial number of the gun, but told the responding officer that it was very old and Russian made.  At about the same time, Lieutenant Michael Fossum was investigating an armed robbery that occurred at a home on Queen Avenue in Minneapolis.  Shortly after Mr. Her reported the theft of his gun, a gun was found by some children in a snowbank not far from the house on Queen Avenue.  The officer who retrieved the gun from the snowbank described the gun as a 7.65 caliber FNH with serial number 387449 (the "FNH").  Lieutenant Fossum called Mr. Her and told him that the police had found his stolen gun and that it would be returned to him after the case against the armed robbers was completed.  Lieutenant Fossum updated the police reports in both the armed robbery case and Mr. Her's burglary.  In his update on the armed robbery case, Lieutenant Fossum called the FNH Russian-made and listed the serial number as 387449.  Lieutenant Fossum subsequently found out that the FNH was actually manufactured in Czechoslovakia, not Russia.  The gun recovered from the snowbank was never released to Mr. Her.  None of the parties dispute that the gun recovered near Lee the day he was shot is the same gun that was stolen from Mr. Her in February 2004.

**D.     The Squad Car Video**

The car driven by Anderson and Benz on the day of the shooting was equipped with a camera that starts recording automatically when the emergency lights and siren are turned on.  Although the recording starts automatically, it can take three seconds or more for the equipment to begin recording.  Anderson and Benz did not control the recording nor did they have access to the videotape.  Anderson turned the lights and siren on shortly before the vehicle allegedly struck Lee.  After the lights and siren were turned on, the car went over a curb and came to a stop, and Anderson and Benz opened their doors, exited the car, and began to chase Lee.  When the video of this incident begins, the squad car is stationary.  The video does not show Lee being hit and neither Anderson nor Benz can be seen exiting the car or chasing Lee.

**E.     Anderson's Hiring and Training**

Prior to being hired by the Minneapolis Police Department, Anderson was required to take a stress hardiness test.  Under the emotional health section of that test, the report concluded that Anderson "has moderate risk for issues with stress hardiness as a result of limited or managed emotional conflicts."  (January 15, 2009 Hechter Aff., ex. 3.)  Before hiring a police officer, the City requires applicants to be licensed by the Minnesota Police Officers Standard and Training Board ("POST").  POST requires an individual to have at least some college education, instruction in various law enforcement-related fields, and clinical skills education.  The City also requires its officers to complete a recruit academy consisting of at least four additional weeks of training.  Recruits also participate in a Field Training Officer Program for up to six months where they receive additional training from

experienced officers.  Anderson completed all of the above training prior to the day he shot Lee.

**F.      Internal Affairs Determination**

After viewing the evidence available to it, the Internal Affairs Division determined that Anderson "was justified in using deadly force" and that he "was in compliance with both MPD Policy and State Law" in his use of deadly force.  (1/23/09 Fussy Aff., ex. 2.) Anderson was eventually awarded the Medal of Valor for his actions the day he shot and killed Lee.

**DISCUSSION**

Plaintiff sued Anderson (1) under 42 U.S.C. § 1983 for violating Lee' s Fourth and Fourteenth Amendment rights, (2) under state law for assault, battery, and intentional infliction of emotional distress, and (3) for punitive damages.  Plaintiff also sued the City of Minneapolis under § 1983 for failing to adequately hire, train, and supervise Anderson and under state law for vicarious liability.  Defendants move for summary judgment on Plaintiff's claim against Anderson for intentional infliction of emotional distress and on all of Plaintiff's claims against the City.  Plaintiff's § 1983, assault, and battery claims against  Anderson are not resolved by this Order.

**A.      Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence

in the light most favorable to the nonmoving party.  <u>Enterprise Bank v. Magna Bank</u>, 92 F.3d

743, 747 (8th Cir. 1996).   However, as the United States Supreme Court has stated,

"summary judgment procedure is properly regarded not as a disfavored procedural shortcut,

but rather as an integral part of the Federal Rules as a whole, which are designed to secure

the just, speedy, and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law.  <u>Enterprise Bank</u>, 92 F.3d

at 747.  A party opposing a properly supported motion for summary judgment may not rest

on mere allegations or denials, but must set forth specific facts in the record showing that

there is a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986);

<u>Krenik v. Le Sueur</u>, 47 F.3d 953, 957 (8th Cir. 1995).

### B.  <u>Monell</u> Liability

Plaintiff sued the City under 42 U.S.C. § 1983, which provides for a cause of action

for the deprivation of Constitutional rights against an individual or entity acting under color

of state law.  In the Amended Complaint, the constitutional deprivation that Plaintiff

complains of is the shooting death of Lee.  Importantly, this case is not about what the police

did or did not do to cover up Anderson's allegedly improper behavior, except as those actions

can be said to have caused Lee's death.[5]  This point will be discussed in more detail below.

---

[5] At summary judgment, Plaintiff argues that the alleged cover-up of Lee's death
violated the constitutional rights of his family members.  In the Amended Complaint,

Under § 1983, a municipality is not automatically liable under the theory of respondeat superior for the allegedly unconstitutional acts of its employees. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978). Rather, in order to hold a city liable under § 1983, a plaintiff must establish that an official policy or custom was "the moving force of the [alleged] constitutional violation." <u>Id.</u> at 694-95 (1978); <u>see also</u> <u>Mettler v. Whitledge</u>, 165 F.3d 1197, 1204 (8th Cir. 1999). "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." <u>Jane Doe "A" v. Special Sch. Dist. of St. Louis County</u>, 901 F.2d 642, 645 (8th Cir. 1990) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986). A "custom" arises where there has been "a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." <u>Id.</u> at 646 (quoting <u>Monell</u>, 436 U.S. at 691).

The Eighth Circuit has made it clear that § 1983 liability requires more than wrongdoing on the part of the city.

> The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

<u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997). Thus, Plaintiff must show not

---

however, Plaintiff only alleges that the harm to Lee's family members arose as a result of the wrongful death of Lee. Accordingly, the Court will construe any claims for damages by Lee's family members as arising out of Lee's death.

only that the City acted deliberately and improperly through an official policy or custom, but also that the City's policy or custom <u>caused</u> Anderson to shoot Lee. Plaintiff has asserted a number of theories in support of her § 1983 claim against the City.

### 1.      Failure to Supervise

In the Amended Complaint, Plaintiff alleges that the City failed to supervise Anderson. <u>Monell</u> liability based on a failure to supervise will only lie where the party charged "demonstrated deliberate indifference or tacit authorization of the offensive acts by failing to take remedial steps following notice of a pattern of such acts by his subordinates." <u>Wilson v. City of North Little Rock</u>, 801 F.2d 316, 322 (8th Cir. 1986); <u>see also</u> <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1075 (8th Cir. 1996) ("To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action."). Plaintiff does not allege in the Amended Complaint that Anderson had exhibited a pattern of objectionable acts or that the City knew or should have been aware of such a pattern. Plaintiff's Memorandum does not mention the failure to supervise claim and does not present evidence that could reasonably raise a genuine issue of material fact with regard to the adequacy of the City's supervision of Anderson. Therefore, Defendant is entitled to summary judgment on the portion of Count II of the Amended Complaint that alleges <u>Monell</u> liability for failing to supervise Anderson.

### 2.      Failure to Train

In Count II, Plaintiff also alleges that the City was negligent in training Anderson.

The City can only be liable under § 1983 if its "failure to train its employees in a relevant respect evidences a deliberate indifference to the rights" of citizens. Thelma D. v. Bd. of Educ., 934 F.2d 929, 934 (8th Cir. 1991) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989)). Neither in the Amended Complaint nor in her Memorandum does Plaintiff identify any particular training policy that she finds deficient. The only evidence Plaintiff cites in support of her failure-to-train claim is the psychological examination that may have raised questions about the prudence of hiring Anderson. (See Section B.3 below.) That evidence, however, does nothing to create a disputed issue of material fact regarding the City's training policies. Therefore, the City is entitled to summary judgment on the portion of Count II of the Amended Complaint that alleges Monell liability for failing to adequately train Anderson.

### 3.     Negligent Hiring

Plaintiff also asserts a § 1983 claim against the City for negligently hiring Anderson. The City cannot be held liable for simply being negligent in hiring Anderson. See Wilson, 801 F.2d at 322 n.3. Rather, Plaintiff must demonstrate "that [Anderson] was highly likely to inflict the particular injury suffered by the [decedent]. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 412 (1997). Plaintiff argues that the psychological exam that concluded that Anderson had a "moderate risk of not functioning well under stress" raises a factual issue as to whether the City acted with the requisite deliberate indifference. Plaintiff's expert, Phil Corrigan, said in his deposition that

the evaluation's conclusion was cause for concern.  (See Corrigan Dep. at 68.)  However, Mr. Corrigan also stated that the evaluation would not have disqualified Anderson from being hired, and that Mr. Corrigan did not know "how this report was dealt with within the confines of the entire background investigation and application process."  (Id.)

Plaintiff has not made the requisite showing that the City ignored a "known or obvious risk of injury" when it hired Anderson despite the psychological evaluation.  See Brown, 520 U.S. at 412.  Plaintiff has not produced any evidence that the City knew or should have known that Anderson's moderate risk of not functioning well under stress would result in Anderson shooting Lee.  Plaintiff has also failed to produce any evidence that the City had a policy or custom of inadequately screening new hires.  No reasonable jury could find, based only on the psychological evaluation and in light of Mr. Corrigan's testimony, that the City was deliberately indifferent to the rights of its citizens by hiring Anderson.  Accordingly, the City is entitled to summary judgment on this claim.

**4.     Failure to Investigate**

In her Memorandum, Plaintiff asserted two new theories of § 1983 liability against the City: failure to investigate and tampering with evidence.  Neither of these theories appear in the Amended Complaint.  Plaintiff did not request leave of the Court to amend her Complaint to include these new theories.  Plaintiff's failure to adhere to the proper procedures for bringing these claims before the Court is reason enough to dismiss them without further discussion. Even if these claims were properly before the Court, however, Plaintiff cannot survive summary judgment on either claim.

As noted previously, in order for the City to be liable, Plaintiff must show (1) that the City acted—through a policy or custom—with deliberate indifference to the rights of Lee, and (2) that the City's policy or custom was the "moving force" or cause of Anderson shooting Lee.  See Brown, 520 U.S. at 404.

### a.    Policy or Custom

Plaintiff alleges that the City's investigation into the shooting of Lee was inadequate in several ways.  First, Plaintiff contends that the City deliberately failed to interview eyewitnesses and Lee's friends.  Plaintiff also alleges that the City did not view the footage from the elementary school's security camera.  Plaintiff does not allege that the City has a history of failing to investigate shooting deaths involving its officers.  Rather, Plaintiff argues that a jury could infer from the City's allegedly inadequate investigation on this single occasion that the City has a policy or custom of not investigating such shootings.

Plaintiff's assertion that a single after-the-fact decision or act by the police can establish an unconstitutional policy or custom by inference is not accurate.  Monell liability can be established by a single act or decision by a policymaker that thereby causes a constitutional violation. See, e.g., Angarita v. St. Louis County,  981 F.2d 1537, 1546 (8th Cir. 1992).  Additionally, it may be  possible that liability can be established by a pattern of shocking and egregious activity by a municipality after a constitutional violation.  See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985).  However, neither of these requirements are met by the evidence supporting Plaintiff's claims.

"An unconstitutional governmental policy can be inferred from a single decision taken

12

by the highest official responsible for setting policy in that area of the government's business." Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992); see also Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986). Moreover, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). However, isolated instances of police misbehavior alone are not enough to establish acquiescence by a municipal policymaker in misconduct. See id. Thus, a single decision by a policymaker must affirmatively promulgate a policy, which in turn caused a constitutional violation, in order to establish Monell liability.

Plaintiff argues that the chief of police ratified a series of troubling activities by police officers, including tampering with evidence, conducting a faulty investigation, and awarding Anderson a medal for shooting Lee. Assuming that the chief of police can be considered a "policymaker," the acts Plaintiff alleges he may have "ratified" are all after the fact, and thus cannot be the "driving force" of the alleged constitutional violation—the shooting of Lee. Thus, even for a single decision or act to establish Monell liability in this case, that decision or act must have caused Lee's death.[6]

---

[6] There is a limited line of caselaw supporting Plaintiff's claim that evidence of activity subsequent to the alleged constitutional violation, by itself, is enough to establish Monell liability. This appears to be the position of the Fifth Circuit in Grandstaff v. City of Borger, Tex., 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987). Other courts have questioned whether Grandstaff was correctly decided. See, e.g., Brown v. City of Elba, 754 F. Supp. 1551, 1558 (M.D. Ala. 1990). Furthermore, it is not clear whether Grandstaff

CASE 0:07-cv-01205-PAM-JSM   Document 87   Filed 05/06/09   Page 14 of 19

### b.    Causation

Even if Plaintiff had produced sufficient evidence of a custom or policy of failing to investigate, the City is still entitled to summary judgment because Plaintiff has failed to produce any evidence that the alleged policy or custom caused Anderson to shoot Lee. Mettler v. Whitledge, 165 F.3d 1197 (8th Cir. 1999), is directly on point.  There, the plaintiff was the mother of a man who was shot and killed by Ramsey County deputies.  The plaintiff argued that Ramsey County was liable under § 1983 in part because the investigation into her son's shooting was inadequate.  The court held that the inadequate investigation into her son's death alone could not establish a policy or custom.  Id. at 1205.  The court also held that the plaintiff failed to prove the essential causation:

> [A]n inadequate investigation into the . . . shooting could not have caused [the deputies] to use excessive force. Rather, [the plaintiff] would need to show that Ramsey County had failed to investigate previous incidents before a court could conclude the deputies at the time of the shooting believed a municipal custom allowed them to violate [the decedent's] rights with impunity.

Id.

As in Mettler, Plaintiff has not produced any evidence that Minneapolis failed to investigate previous incidents of police misconduct.  There is no evidence that, because of some custom or policy of Minneapolis, Anderson thought he could shoot Lee "with impunity."  Even assuming all of Plaintiff's allegations about the inadequacies of the

---

is good law after the Supreme Court's ruling in City of Canton v. Harris, 489 U.S. 378 (1988). See Brown, 754 F. Supp. at 1558.  Notwithstanding the questionable legal ground of Grandstaff, the facts alleged by Plaintiff in this case are readily distinguishable from the much more egregious facts of Gradstaff. Cf. Brown, 754 F. Supp. at 1558.

investigation into Lee's death are true, "the shortcomings would not prove the flawed investigation was a moving force behind" Anderson's alleged misconduct.  The City is entitled to summary judgment on Plaintiff's § 1983 claim for failure to investigate.

### 5.   Tampering with Evidence

Plaintiff also asserts for the first time at summary judgment that the City is liable under § 1983 for tampering with evidence.  Plaintiff alleges that Minneapolis altered the videotape from Anderson's squad car.  After the briefing was complete on the Motion for Summary Judgment and the Court took the Motion under advisement, Plaintiff twice submitted additional evidence that allegedly suggests a gun was planted on Lee after he was shot.

Plaintiff's claim arising out of the alleged evidence-tampering fails for the same reasons as her claim for failure to investigate. Even assuming that Minneapolis police officers did in fact alter the video from the squad car and plant the gun at the scene of the shooting, Plaintiff has still failed to produce any evidence that the City has a history of tampering with evidence to cover up police misconduct. Without evidence that the City had covered up prior police misconduct by tampering with evidence, the City's alleged coverup after Lee's death simply cannot be the "moving force" behind Anderson's decision to shoot Lee.  Accordingly, the City is entitled to summary judgment on Plaintiff's § 1983 claim for tampering with evidence.

## C.   State Negligence Claims

Plaintiff alleges in Count V of the Amended Complaint that under state law the City

was negligent in the hiring, supervision, control and retention of Anderson.[7]  The City argues

that it is entitled to summary judgment on Plaintiff's negligence claims against it because it

has statutory discretionary immunity.   Under Minnesota law, municipalities can be held

liable for the torts it and its employees commit, subject to certain exceptions.   Minn. Stat.

§ 466.02.   One such exception is for "[a]ny claim based upon the performance or the failure

to exercise or perform a discretionary function or duty, whether or not the discretion is

abused."  Minn. Stat. § 466.03.   In order to qualify for the statutory immunity, the City's

decisions regarding hiring, retaining, and supervising Anderson must be "planning level

conduct" rather than "operational level conduct."   See Watson v. Metro. Transit Comm'n,

553 N.W.2d 406, 412-13 (Minn. 1996).   Minnesota courts have held as a matter of law that

decisions regarding supervision, hiring, and retention involve balancing policy considerations

and are therefore entitled to statutory discretionary immunity.   See, e.g., Gleason v. Metro.

Council Transit Operations, 563 N.W.2d 309, 320 (Minn. Ct. App. 1997).   Accordingly, the

City is entitled to summary judgment on Plaintiff's state-law negligence claims.

Imposing vicarious liability on the City in these circumstances would render

meaningless the protection that statutory discretionary immunity offers.  In addition, as noted

above, the City cannot be vicariously liable for Anderson's actions under § 1983.  The City

---

[7] Minnesota recognizes only three negligence actions when an employer is sued for
damage caused by its employee: negligent hiring, supervision, and retention.  See M.L. v.
Magnuson, 531 N.W.2d 849, 856 (Minn. Ct. App. 1995).   Therefore, Plaintiff's claim for
negligent control will be construed as a claim for negligent supervision.  See, e.g., Walker
v. Minn. Mining & Mfg. Co., No. C4-99-1715, 2000 WL 520254, at *5 (Minn. Ct. App. May
2, 2000) (construing claim for negligent control as a claim for negligent supervision).

is therefore entitled to summary judgment on all of Plaintiff's claims that the City is vicariously liable for Anderson's alleged wrongdoing.

## D.   Intentional Infliction of Emotional Distress

Anderson moves for summary judgment on Plaintiff's intentional infliction of emotional distress ("IIED") claim.  In order to establish a prima facie case of IIED, "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."  Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983).  In addition, the Hubbard court recognized "the limited scope of this cause of action" and counseled that "[t]he operation of this tort is sharply limited to cases involving particularly egregious facts."  Id. at 439.  At this stage of the  litigation the parties do not dispute that Anderson's conduct may meet the "extreme and outrageous" requirement.  Anderson argues, however, that there is no evidence that Lee suffered severe emotional distress the day he was killed.  In response, Plaintiff urges the Court to take judicial notice of the fact that someone who was chased by a police officer, shot "numerous, numerous times," and "allowed to die slowly from bleed-out" would have suffered severe emotional distress.  (Pl.'s Opp'n Mem. at 19.)

Under the Federal Rules of Evidence, a court may take judicial notice of two kinds of facts: those that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  F.R.E. 201(b).  A court is only required to take judicial notice "if requested by a party and supplied with the necessary information."  Id. 201(d)

17

(emphasis added). Plaintiff has not provided the Court with any information to support her request that the Court take judicial notice of Lee's allegedly severe emotional distress. In light of the extremely limited scope of an IIED action and the disputed facts surrounding Lee's death, the Court declines to take judicial notice of the severity of Lee's alleged emotional distress. See Am. Prairie Constr. Co. v. Hoich, 560 F.3d 780, 797 (8th Cir. 2009) ("Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b).") (citation omitted).

In declining to take judicial notice of the severe emotional distress, the Court does not discount the fact that Lee was chased by Anderson and shot multiple times. The severity of whatever distress Lee may have felt that day is simply not the kind of fact that is appropriate for judicial notice. Plaintiff has failed to satisfy her burden of producing evidence to raise a genuine issue of material fact as to the severity of Lee's emotional distress. Accordingly, Anderson is entitled to summary judgment on Plaintiff's IIED claim.

Anderson is also entitled to summary judgment to the extent that the Amended Complaint can be read to assert an IIED claim directly on behalf Plaintiff or the heirs and next-of-kin of Lee. Minnesota limits IIED claims to those persons who are present at the time of the offending action and to whom the defendant has intended to cause severe emotional distress. See Dornfeld v. Oberg, 503 N.W.2d 115, 120 & n.5 (Minn. 1993).

**CONCLUSION**

Plaintiff has failed to produce any evidence that a policy or custom of the City caused

Anderson's alleged misconduct the day he shot and killed Lee.  The Court does not discount the seriousness of the charges that Plaintiff has leveled against the City, including a widespread conspiracy to cover up the details of Lee's death.  However, based on the claims raised in the Amended Complaint, the City is entitled to summary judgment.   Anderson is also entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment (Docket No. 39) is **GRANTED**.

Dated:   May   6 ,  2009

s/Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge