# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

**Youa Vang Lee, trustee for the**          **COURT FILE NO. 07W1205**
**Heirs and next-of-kin of**                **PAM/JSM07CV1205 PAM/JSM**
**Fong Lee, Decedent,**

                              **Plaintiff,**

**vs.**                                      **DEFENDANTS' TRIAL BRIEF**


**Officer Jason Andersen**
**The City of Minneapolis**
**State Trooper Craig Benz**
**and the State of Minnesota**

                    **Defendant**

## I.    INTRODUCTION

Jason Andersen and the City of Minneapolis offer this trial brief outlining

the facts they intend to present at trial and a discussion of the relevant legal

issues in this matter.

## II.    FACTS

On July, 22 2006, Officer Jason Andersen and State Trooper Craig Benz

were patrolling together in a marked squad in the area of CityView Elementary

School in North Minneapolis.  Officer Andersen and Trooper Benz saw several

males riding bikes on Third Street heading toward the school. Officer Andersen decided to follow the men on the bikes. They had their windows down in their squad car and tried to talk to the cyclists to make citizen contact. Two of the cyclists headed Northwest and the squad car followed them. Soon after the cyclists turned the officers saw the two cyclists exchange an item between them. Andersen saw that the item was a gun, and it was passed to a man now known to be Fong Lee. The man riding with Fong Lee at that time was apparently Tou Xiong.

Fong Lee continued riding his bike a short wile, then dropped his bike and ran away in a Northeasterly direction carrying the gun. The squad car never made contact with or hit any cyclist or any bicycle. The cyclists with Fong Lee that day fled the scene when Lee started fleeing the officers.

Trooper Benz also saw Lee with the gun and yelled "gun" and "police." Officer Andersen and Trooper Benz then exited the squad. Both officers drew their weapons and chased after Lee on foot. Officer Andersen ran after Lee while commanding him to stop and to drop his gun. Andersen aired on the Police radio that he was chasing a person with a gun. Early in the foot chase Trooper Benz turned back briefly to get the squad car, then thought better of that idea

and continued with the foot chase.  Trooper Benz was behind Officer Andersen when he began running again.

Andersen chased Lee around a corner of the school between the school and a retaining wall next to I-94.  As Andersen chased him, Lee turned back towards Andersen and started to raise his gun.  Andersen, who had been repeatedly yelling for Lee to drop the gun, reacted to Lee's threat to his life and shot his weapon.  Andersen's shot hit the ground, not Lee, and the chase continued.  Lee kept running around the building and soon found himself in an artificial box canyon.  The school building was to his left and in front of him, and a steep embankment prevented any further flight to his right.  Lee's only means of retreat would have been back towards Andersen.  Andersen kept yelling at Lee to drop the gun.  Lee turned a second time towards Andersen while holding the gun.  Andersen feared for his life and fired his pistol three times.  This time the shots hit Lee and knocked him to the ground.  Andersen again ordered Lee to drop the gun, but Lee held on to the gun and raised it yet again.  Andersen fired his final shots at Lee.  Lee's gun fell from his hands and landed near his left hand.  Andersen maintained a defensive stance until he was certain the danger subsided.  Lee died as a result of his gunshot wounds.

Backup squad cars quickly arrived to assist.  One of the first officers to arrive was Officer Bruce Johnson.  Johnson saw Andersen holding his gun towards Lee.  He approached Andersen and had him taken to a squad car to segregate him from the responding officers, as is dictated MPD policy.  Johnson approached Lee's body and saw him on the ground on his back with a gun laying in the grass two to three feet from Lee's left hand.

Numerous other officers arrived at the scene and saw the same situation. Most helped to create a perimeter, others assessed Lee's injuries, and others assisted the crime lab by placing blue cards next to any evidence they saw at the scene.  Such evidence included spent shell casings, and the gun at Lee's left side.

A Russian made Baikal °380 -- BHE2281 was recovered next to Lee with a round in its chamber, several more rounds in its magazine and the safety in the firing position.

Jason Andersen reasonably perceived that his life was in danger when Lee turned towards him with the gun, and each time thereafter before he shot.  Thus, he was justified in the use of deadly force to protect himself and others, as well as to prevent the flight of a person who had offered deadly force and one that might use deadly force again.

III.   **ISSUES**

a.  **State Law Claims**

i.  **Andersen is entitled to official immunity for all state law claims.**

Under Minnesota law, a public official is automatically entitled to official immunity from state law claims when he is charged by law with duties that require the exercise of judgment or discretion. *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990); *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1988). Duties of law enforcement and crime prevention by police officers are considered discretionary duties entitling them to official immunity. *Johnson v. Morris*, at 41-42. State law immunity rests on the same rationale as federal qualified immunity: courts must insure that the threat of suit does not inhibit public officials' exercise of discretion in discharging their duties. *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991); *Holmquist v. State*, 425 N.W.2d 230, 233 n.1 (Minn. 1988). Like the federal doctrine of qualified immunity, official immunity is broadest when police act in emergency situations and high-risk circumstances. *Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn. 1992) (immunity is broad because the community cannot expect its police officers to do their duty and then to second-guess them when they do it); *See also McGovern v. City of Minneapolis*, 480 N.W.2d 121, 126 (Minn. Ct. App. 1992).

"[U]nder Minnesota law, the decision to use deadly force is a discretionary decision entitling a police officer to official immunity absent a willful or malicious wrong." *Hassan v. City of Minneapolis,* 489 F.3d 914, 920 (8th Cir. 2007) (*citing Maras v. City of Brainerd,* 502 N.W.2d 69, 77 (Minn.Ct.App.1993))   Only proof that the officer committed a willful or malicious wrong can defeat official immunity.   *Elwood*, 423 N.W.2d at 679; *Susla v. State,* 247 N.W.2d 907, 912 (Minn. 1976).   This requires proof of the officer's "intentional doing of a wrongful act without legal justification or excuse".   *Rico*, 472 N.W.2d 100, 107.   But a plaintiff must do more than allege malice or willfulness:   the plaintiff must present specific facts showing that the official <u>knew</u> that what he or she was doing lacked legal justification.   *Reuter v. City of New Hope*, 449 N.W.2d 745, 751 (Minn. App. 1990); *Frank's Livestock & Poultry Farm, Inc. v. City of Wells,* 431 N.W.2d 574, 578 (Minn. App. 1988).   The measure of proof of "malice" to defeat official immunity resembles the measure of proof necessary to defeat federal qualified immunity: the plaintiff must prove that the defendant knowingly violated clearly established law at the time he acted:

> [T]he wilful or malicious wrong exception to official immunity ... does not impose liability merely because an official <u>intentionally</u> commits an act that a court or a jury subsequently determines is a wrong. Instead, the exception anticipates liability only when an official

intentionally commits an act that he or she then has reason to believe is prohibited.

*Rico v. State*, 472 N.W.2d 100, 107 (emphasis in original).

Plaintiff can present no specific facts from which a reasonable jury could infer malice on the part of Jason Andersen. Andersen admits that he shot Mr. Lee. However, the evidence will clearly show that the shooting was done without malice as Andersen reasonably feared for his own life and bodily integrity and the lives of others when he fired at Lee. All state law claims against Andersen must be dismissed.

### ii. City of Minneapolis is entitled to vicarious official immunity for the remaining state law claims.

Official immunity protects government entities from vicarious liability for actions that are entitled to immunity. *Craighead v. Lee*, 399 F.3d 954, (8th Cir. 1998), *citing Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998). Where the employee is protected by official immunity, the governmental entity will not be called on to indemnify the individual nor will the entity be liable under the doctrine of *respondeat superior*. *Watson by Hanson v. Metropolitan Transit Commission*, 553 N.W.2d 406, 415 (Minn. 1996). All state law claims against the City must, therefore, also be dismissed.

### iii.  The City is entitled to statutory immunity for all state law claims.

The Court has already ruled that the City is protected by statutory immunity for the claims directly brought against it.

### iv.  Assault and Battery

Plaintiff claims that Andersen committed assault and battery when he seized Lee on July 22, 2006.

> An assault is an unlawful threat to do bodily harm to another with the present ability to carry the threat into effect.

*Dahlin v. Frazer,* 288 N.W. 851, 852 (Minn. 1939).   A battery is defined as an "intentional unpermitted offensive contact of another."   *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn. 1980).   Because a police officer may come in contact with an individual for certain purposes, the use of force by a police officer must be excessive to constitute battery.   *Johnson v. Peterson*, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984) (citing *Paradise*, 297 N.W.2d 152, 155); Minn. Stat. §§ 609.06 and 066.   Thus, excessive or unreasonable force is an element of battery when the accused is a police officer executing an official duty. *Id.*

Under Minnesota statutes a police officer, in the execution of his duties, may use deadly force in certain circumstances:

**Subd. 2. Use of deadly force.** Notwithstanding the provisions of section 609.06 or 609.065, the use of deadly force by a peace officer in the line of duty is justified only when necessary:

(1) to protect the peace officer or another from apparent death or great bodily harm;

(2) to effect the arrest or capture, or prevent the escape, of a person whom the peace officer knows or has reasonable grounds to believe has committed or attempted to commit a felony involving the use or threatened use of deadly force; or

(3) to effect the arrest or capture, or prevent the escape, of a person whom the officer knows or has reasonable grounds to believe has committed or attempted to commit a felony if the officer reasonably believes that the person will cause death or great bodily harm if the person's apprehension is delayed.

Minn. Stat. § 609.066.   Thus, if Andersen acted in conformity with any of the three subdivisions, his actions are protected by statute.   In this case the evidence will show that Andersen shots at Lee were justified under each of the three different criteria.   He shot to protect himself and others against imminent death or bodily harm.   He shot to prevent the escape of a person who committed felony involving the threatened use of force, and he shot to effect the arrest of someone

whom he reasonably believed would cause death or grievous bodily harm if his

apprehension was delayed.

### b. Federal Claims

#### i. Plaintiff's 42 U.S.C. § 1983 claims against Andersen fail.

> Section 1983 prohibits government officials from depriving other persons
> of "rights, privileges, or immunities secured by the Constitution." 42
> U.S.C. § 1983. However, government officials are entitled to dismissal "if
> their conduct does not violate clearly established statutory or
> constitutional rights of which a reasonable person would have known."
> *Sanders v. City of Minneapolis*, 474 F.3d 523, 526 (8th Cir.2007) (internal
> quotation marks omitted).

*Hassan v. City of Minneapolis*, 489 F.3d 914, 918 -919 (8th Cir. 2007).  In claims of

excessive force, the court must analyze the situation under the Fourth

Amendment's objective reasonableness standard.  *Id.*, citing *Craighead v. Lee*, 399

F.3d 954, 961 (8th Cir.2005)

It is unreasonable under the Fourth Amendment's "objective

reasonableness" standard to "seize an unarmed, nondangerous suspect by

shooting him dead."  *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (*citing Tennessee

v. Garner*, 471 U.S. 1, 11 (1985)).  However, when officers have probable cause to

believe that the suspect "poses a threat of serious physical harm, either to the

officer[s] or to others…" the use of deadly force to prevent a suspect's escape is not constitutionally unreasonable. *Id.*

The Fourth Amendment protects citizens from being seized through the use of force by law enforcement officers. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Factors relevant to the analysis of an excessive force claim are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Under *Graham*, the test is one of objective reasonableness. In other words, no liability attaches to an officers' use of force if a reasonable police officer at the scene could have used such force. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Grahm v. Connor*, 490 U.S. 386, 396 (1989). In evaluating excessive force claims, "the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Saucier v Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2158. (2001) In *Saucier*, the Court concluded:

> Because police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force

should be judged from that on-scene perspective.  We set out a test that cautioned against the '20/20 vision hindsight' in favor of deference to the judgment of reasonable officers on the scene.

*Id.*

In a case where an officer believed a suspect intended to run him over, the Eighth Circuit found that the officer's use of deadly force against him was objectively reasonable.  *Hernandez v. Jarman,* 340 F.3d 617, 623 (8th Cir. 2003).  The Court held that the officer's action did not constitute excessive force in violation of the Fourth Amendment, and, therefore, was entitled to qualified immunity.

As the Supreme Court noted in *Brosseau v. Haugen,* 543 U.S. 194 (2004), courts found no Fourth Amendment violation when an officer shot a fleeing suspect who presented a risk to others.  *See, Cole v. Bone,* 993 F.2d 1328, 1333 (8th Cir. 1993) (officer had probable cause to believe that the truck posed an imminent threat of serious physical harm to innocent motorists as well as to the officers themselves) and *Smith v. Freland,* 954 F.2d 343, 347 (6th Cir. 1992) (a car can be a deadly weapon and officer's decision to stop the car from possibly injuring others was reasonable).

In this case Andersen and Benz were faced with a rapidly evolving situation.  One that quickly transitioned from a routine attempt at citizen contact

to a fleeing citizen with a gun, a chase, threatening motions with the gun, and finally, a shooting. The evidence will show that Andersen acted reasonably at all relevant times during the pursuit and shooting of Lee.

### ii. Andersen is entitled to qualified immunity for his actions.

Qualified immunity is designed to shield officers from liability if a reasonable officer could have believed his or her conduct was lawful in light of both clearly established law and the information possessed by the officers *at the time of their actions*. *Lyles v. City of Barling*, 181 F.3d 914, 917 (8th Cir. 1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). This inquiry is an entirely objective one, and a court faced with a qualified immunity claim must inquire as to whether the official's actions were objectively reasonable at the time of the incident. *Anderson*, 483 U.S. at 639. Further, the grant of qualified immunity is broad: courts deny such immunity only when it is obvious that no reasonable officer would have concluded that such conduct was legal, and if officers of reasonable competence could disagree on a matter, immunity must be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In determining whether a police officer is entitled to qualified immunity from a § 1983 claim, the Court first considers whether the facts alleged, construed

in the light most favorable to the non-moving party, show that the officer violated a constitutional right. If no constitutional right could have been violated if the allegations were established, there is no necessity for further inquiries concerning qualified immunity. *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

The Eighth Circuit has made it clear that dismissal is mandated either if the law prohibiting the alleged police misconduct was not clearly established at the time it occurred, or if a reasonable officer could have believed his conduct to be lawful. *Ginter v. Stallcup*, 869 F.2d 385, 387 (8th Cir. 1989); Myers v. Morris, 810 F.2d 1437, 1461-62 (8th Cir. 1987). Whether qualified immunity applies is a question for the court. *Corren v. Hanson*, 880 F.2d 95, 97 (8th Cir. 1989); *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

A court faced with a qualified immunity claim must ask whether the official's actions were <u>objectively</u> reasonable in light of "clearly established law" that existed at the time the defendant acted. *Anderson*, 485 U.S. at 639. An official's subjective motivations or beliefs about his conduct are irrelevant. Thus, an allegation of malice is also irrelevant to the federal qualified immunity issue. *Anderson*, 485 U.S. at 641; *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

The Supreme Court has cautioned that the nation's courts should be careful in selecting the level of generality at which they define the "clearly established law" for purposes of qualified immunity: "The contours of the right [alleged to have been violated] must be sufficiently clear that a reasonable officer would understand that **what he is doing** violates that right." *Anderson*, 483 U.S. at 639-40 (emphasis added). "Clearly established law" normally requires the existence of cases applying the law to the precise factual circumstances the official faced when he acted. *Id.* A plaintiff must show that the right was clearly established in a particularized sense relevant to the case at hand. *Mettler*, 165 F.3d at 1203 (*citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Qualified immunity is denied only when "it is ***obvious*** that no reasonably competent officer would have concluded" that his conduct was reasonable. *Malley*, 475 U.S. at 341 *emphasis added*. This broad immunity rests on the need to assure officers who make judgment calls that their actions will not be met by lawsuits in close cases, lest the fear of lawsuits dampen their willingness to do their jobs. *Harlow*, 475 U.S. at 807, 815 (1982).

At its heart, Plaintiff's § 1983 claim is an excessive force claim. As such, the Court must undertake an objective reasonableness inquiry. The Court judges the

reasonableness of the use of force from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 397 (1989). This reasonableness inquiry is also mindful of the fact that police officers must make split-second decisions in tense and dangerous situations. *Id*. at 396-97.

In this case, the evidence will show that Andersen reasonably determined that the use of deadly force was necessary after Lee abandoned his bike and fled him on foot at breakneck speed and repeatedly turned towards him with a gun in his hand. Andersen had a right and duty to protect the lives of himself and others, and to prevent the escape of a person who had offered deadly force to a police officer. A reasonable officer in a like situation would make the same choice. Thus, Andersen is entitled to qualified immunity.

### iii.  No constitutional rights were implicated when Andersen and Benz followed the cyclists.

Plaintiff may argue that Andersen and Benz committed a constitutional violation when Andersen decided to follow the group of bicyclists through the school parking lot. However, any such argument ignores the fact that no seizure had occurred at that point.

> Not every officer-citizen encounter triggers fourth amendment concerns. Thus, the Supreme Court has clearly indicated that a law enforcement officer does not violate the fourth amendment "by merely approaching an individual * * * in [a] public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions."

*U.S. v. Miller*, 835 F.2d 187, 189 (8th Cir.1987) (*quoting Florida v. Royer,* 460 U.S. 491, 497, (1983) (plurality).   Police officers do not violate the Fourth Amendment's prohibitions by "merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."   *U.S. v. Drayton*, 536 U.S. 194, 200 (2002); *see* e.g., *United States v. Hernandez*, 854 F.2d 295, 297 (8th Cir.1988); *United States v. Archer*, 840 F.2d 567, 572 (8th Cir.1988), cert. denied, 488 U.S. 941 (1988); *United States v. Campbell,* 843 F.2d 1089, 1092-93 (8th Cir.1988); *Greer v. City of Dulut*h, 2007 WL 547737, 11 (D.Minn. 2007).

In this case Andersen followed the men through the parking lot without his emergency lights on and at a slow rate of speed.  He was observing them, but made no attempt to stop or seize them.  This is the kind of behavior officers conduct all the time, whether sitting in their squad cars near a corner where drugs are known to be sold, or walking up and initiating conversations with

members of the public on the street.  Andersen's action is clearly not a stop, and

not sufficient to implicate the bicycle riders' Fourth Amendment protections.

### c.  Damages

#### i.  42 U.S.C. § 1983 and State of Minnesota Wrongful Death, Minn. Stat. § 573.02

"Federal law provides no remedy under § 1983 for wrongful death."  *Gill*

*v. Maciejewski*, 546 F.3d 557, 565 (8th Cir. 2008).  Thus, courts are directed to look

to state law on wrongful death to find a suitable remedy when a wrongful death

claim is brought under § 1983.  Thus, regardless of whether Plaintiff's claim is

made pursuant to § 1983 Wrongful Death, or § 573.02 Wrongful Death, the Court

should instruct the jury as to damages in the the same way.

> There are 12 factors for a jury to consider in determining a fair amount: (1) past contributions, (2) life expectancy at the time of death, (3) health, age, habits, talents, and success, (4) occupation, (5) past earnings, (6) likely future earning capacity and prospects of bettering oneself had he or she lived, (7) living expenses, (8) legal obligation to support spouse or next of kin and the likelihood of fulfilling that obligation, (9) reasonable funeral and necessary medical expenses, (10) probability of paying off existing debts, (11) future counsel, guidance, and aid, and (12) future advice, comfort, assistance, and protection.

*Youngquist v. Western Nat. Mut. Ins. Co.*, 716 N.W.2d 383, 386 (Minn. Ct. App.

2006) (emphasis removed).  Thus, all claims for damages must be limited to the

factors described in *Youngquist* and Minnesota CIVJIG 91.75.

### ii.  Punitive Damages

Defendant City of Minneapolis is immune from punitive damages, both for state and for federal claims.  Punitive damages in this action for the §1983 claim are governed by the standards of 8th Cir. Inst. 4.50C.  Any punitive damage instruction should be directed against Defendant Andersen alone.  A draft that is not explicit is likely to lead the jury to conclude that the City is liable for Andersen's actions.  A separate state law punitive damages instruction should be avoided, as two instructions would further confuse the jury.

### d.  Other issues

### i.  Spoliation

Defendants are aware that Plaintiffs may request a spoliation instruction in regard to Andersen's squad car video.  Spoliation is the intentional destruction of evidence.  *E*Trade Secs. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 587 (D. Minn. 2005).  The moving party has the burden to prove spoliation.  *See Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806 (8th Cir. 2005).  The moving party must also demonstrate that it will be prejudiced by the absence of the evidence.  *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035-1036 (8th Cir. 2007); *Stevenson*, 354 F.3d at 748 (citing *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993))

There is no factual basis for this allegation.  Plaintiff has offered no expert analysis of the squad car video and cannot present any evidence indicating that the squad video was spoiled or tampered with in any way.  The original video recovered from the squad car will be present and viewable at trial.

### ii.  Conspiracy

Plaintiff's allegations of conspiracy are insufficient in themselves to defeat the Andersen's claims of qualified immunity.  "[C]onclusory and unsupported allegation of conspiratorial purpose fails to defeat an assertion of qualified immunity by a defendant otherwise entitled to that defense."  *Myers v. Morris*, 810 F.2d 1437, 1453 (8th Cir. 1987).  Because qualified immunity applies to acts by individual officers, it must be analyzed individually by each defendant.

To advance a theory of conspiracy, Plaintiff "must 'allege with particularity and specifically demonstrate material facts that demonstrate defendants reached an agreement.'"  *Reasonover v. St. Louis County*, 447 F.3d 569, 582 (8th Cir. 2006) (*quoting Marti v. City of Maplewood*, 57 F.3d 680, 685 (8th Cir. 1995)).  Plaintiff must show that one or more of the conspirators did or caused to be done an act in furtherance of the conspiracy.  *Lac du Flambeau Indians v. Stop Treaty Abuse-Wis*, 759 F.Supp. 1339, 1351 (W.D. Wis. 1991).

Here there is no claim of conspiracy, and Andersen is not alleged in the Amended Complaint to be a conspirator.  There is no evidence, circumstantial or otherwise, that Andersen conspired with other officers to weight the investigation of the shooting in his favor.  Plaintiff might look to one or more events in the investigation and allege that something could have been done better.  But, such *post hoc* criticism, however well or badly founded, is not evidence of conspiracy.

### iii.  Motions *in limine*.

Defendants are filing their motions *in limine* separate from this brief.

### iv.  Estimated length of trial.

Defendants estimate that the length for the entire trial, including jury

selection and jury charge to be 7 to 8 days.

Dated: May 10, 2009                    SUSAN L. SEGAL
                                       City Attorney
                                       By
                                       s/GregoryPSautter
                                       JAMES A. MOORE
                                       Attorney Reg. No. 16883x
                                       (612) 673-2063
                                       GREGORY P. SAUTTER
                                       Attorney Reg. No. 0326446
                                       (612) 673-2683
                                       Assistant City Attorneys
                                       333 South 7th Street, Suite 300
                                       Minneapolis, MN  55402-2453

                                       *Attorneys for Defendants*